IN THE COURT OF COMMON PLEAS OF
JEFERSON COUNTY, OHIO

| | |
|---|---|
| **TRINITY HEALTH SYSTEM**<br>380 Summit Avenue<br>Steubenville, Ohio 43952,<br><br>    Plaintiff,<br><br>v.<br><br>**WEIRTON MEDICAL CENTER, INC.**<br>601 Colliers Way<br>Weirton, West Virginia 26062,<br><br>    and<br><br>**WHEELING HOSPITAL, INC.**<br>1 Medical Park<br>Wheeling, West Virginia 26003,<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>  Case No. 14CV00468<br>:<br>  Judge<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

[Filed stamp: 2014 OCT 21 A 9:39, Jefferson County Clerk of Courts, OH]

## COMPLAINT
### (WITH JURY DEMAND ENDORSED HEREON)

Now comes Trinity Health System ("Trinity"), and for its complaint states the following:

### Nature Of Action

1. This action concerns acts of collusion between Weirton Medical Center, Inc. ("Weirton") and Wheeling Hospital, Inc. ("Wheeling") (together, sometimes hereafter referred to as the "West Virginia Hospitals") whereby they concealed from Trinity a scheme to knowingly interfere in a contractual relationship Trinity has with a long-term acute care provider without privilege to do so. Such collusive and tortious conduct has resulted in current damages and will result in additional damages from the loss of twenty long-term acute care beds, each of which generated annual revenue, which consists of rent plus approximately $68,000 of ancillary revenue representing an annual income loss of $3.3 million.

7660420v1

## The Parties

2.     Trinity is an Ohio non-profit corporation which has a principal place of business in Steubenville, Ohio, and which owns and operates hospital facilities in Jefferson County, Ohio.

3.     Weirton is a West Virginia corporation with its principal place of business in Weirton, West Virginia, and owns and operates a hospital in Brooke County, West Virginia.

4.     Wheeling is a West Virginia corporation with its principal place of business in Wheeling, West Virginia, and owns and operates a hospital in Ohio County, West Virginia.

## Jurisdiction

5.     This Court has personal jurisdiction over Defendants because Defendants caused tortious injury by an act or omission in Ohio, and because Defendants caused tortious injury in Ohio by an act outside of Ohio where they could have reasonably expected that injury would result in Ohio.

## Facts Common To All Claims

**Trinity/Acuity Lease**

6.     On or about July 1, 2005, Trinity entered into a lease agreement with Acuity Specialty Hospital – Ohio Valley, L.P., an Ohio limited partnership ("Acuity"), whereby Trinity leased to Acuity approximately 26,253 square feet on the third floor of the East Campus of Trinity in Steubenville, Ohio (the "Premises"), for the establishment and operation of a long-term acute care hospital (the "Lease").

7.     Pursuant to the terms of the Lease, Acuity agreed to pay Trinity $14,838 per bed per year and operates a 40-bed facility.

8.     In addition to the rental payment per bed, Trinity receives income for providing ancillary services in the approximate amount of $68,000 per bed per year, so that the total income stream to Trinity per bed per year is almost $83,000.

9. Section 5.7 of the Lease provides that Acuity shall not "own, manage, operate, control, participate in the management or control of,... or maintain or continue any interest whatsoever in any long-term acute care hospital" within a forty mile radius of the Premises without the expressed consent of Trinity.

10. Both Wheeling and Weirton are within a forty-mile radius of the Premises leased to Acuity by Trinity.

**The Scheme of Wheeling and Weirton**

11. Wheeling and Weirton, upon information and belief, had knowledge of the contractual relationship between Acuity and Trinity, including the non-compete provisions in the Lease.

12. Notwithstanding Wheeling and Weirton's knowledge of the Lease and its restrictions, Defendants began colluding with each other and Acuity to support a scheme whereby Acuity would establish long-term care hospitals at the respective facilities of Wheeling and Weirton and would even transfer twenty of the forty beds at Trinity to the Weirton facility in West Virginia.

13. By September 2013, Acuity and Trinity were in the middle of a six-year term on the Lease.

14. Sometime before September 2013, Acuity retained an architect and both Weirton and Wheeling permitted the architect to come on the premises of their facilities so that the architect could measure and investigate the planned space that would be leased to Acuity by the Defendants.

15. Sometime before September 2013, Acuity signed a letter of intent with each of Weirton and Wheeling to establish long-term acute care hospitals at their respective facilities.

3

7660420v1

16. In furtherance of their scheme to interfere with the contractual relationship between Acuity and Trinity, Weirton and Wheeling further colluded with Acuity in the preparation for certificate of need ("CON") applications submitted by Acuity to the West Virginia Health Care Authority "for the development of a long-term acute care hospital" on the campuses of Weirton and Wheeling.

**The Weirton Collusion**

17. Reflective of Weirton's collusion, on September 6, 2013, the General Partner of Acuity adopted a resolution authorizing Acuity "to develop a long term acute care hospital of up to twenty (20) beds within Weirton Medical Center" and further authorizing "a capital expenditure estimated to be $1,875,000 in connection with said project," and authorized the filing of an application for a certificate of need (the "Weirton Resolution").

18. On the very same day Acuity adopted the "Weirton Resolution," the Chairman of the Board of Directors of Weirton signed a letter to Acuity supporting Acuity's certification of need application to develop a twenty-bed long-term acute care hospital on the Weirton campus.

19. In its Weirton CON application, Acuity stated:

> "ASH [Acuity] has an existing forty-bed unit in Steubenville, Ohio. ASH proposes transferring twenty of its beds to the proposed unit in WMC [Weirton]. ASH will operate the twenty-bed LTACH at WMC as a satellite unit of its Steubenville LTACH."

20. The provision quoted in the preceding paragraph represents a knowing and intentional violation of the Lease and could not have been accomplished without the express agreement and assistance of Weirton.

21. Upon information and belief, Weirton is aware that Acuity plans to utilize the "existing staff at its Steubenville, Ohio LTACH where possible," as stated in the CON application filed by Acuity so that not only has Weirton orchestrated a breach of the Lease,

4

7660420v1

it has even agreed that Acuity will perform such breach by staffing the Weirton long-term acute care hospital with staff currently providing services at the Acuity long-term care hospital at the Trinity site.

**The Wheeling Collusion**

22. Reflective of Wheeling's Collusion, on September 6, 2013, the General Partner of Acuity adopted a resolution authorizing Acuity "to develop a long term acute care hospital of up to thirteen beds within Wheeling Hospital in Wheeling, West Virginia," and further authorizing "a capital expenditure estimated to be $1,300,000 in connection with said project," and authorized the filing of an application for a certificate of need (the "Wheeling Resolution").

23. On the very same day Acuity adopted the "Wheeling Resolution," the President of the Board of Directors of Wheeling signed a letter to Acuity supporting Acuity's certification of need application to develop a thirteen-bed long-term acute care hospital within Wheeling Hospital.

24. Upon information and belief, Wheeling is aware that Acuity plans to utilize the "existing staff at its Steubenville, Ohio LTACH where possible," as stated in the CON application filed by Acuity so that not only has Wheeling orchestrated a breach of the Lease, it has even agreed that Acuity will perform such breach by staffing the Wheeling long-term care hospital with staff currently providing services at the Acuity long-term care hospital at the Trinity site.

**Other Joint Acts of Collusion**

25. Further evidence of the collusion among Acuity, Wheeling, and Weirton is the fact that all on the same day – September 6, 2013 – Acuity adopted resolutions in support of pursuit of long-term acute care hospitals at Wheeling and Weirton and the respective board

chairman and board president of Weirton and Wheeling signed letters in support of Acuity CON applications.

26. Further evidence of the collusion among Acuity, Wheeling, and Weirton is that on or about May 29, 2014, Weirton and Wheeling filed an action in the Circuit Court of Brooke County, West Virginia, against Trinity, Acuity, and Acuity's general partner (the "Collusive Lawsuit").

27. Reflective of the actual knowledge Wheeling and Weirton have of the restrictive covenants in the Lease, Weirton and Wheeling allege in the Collusive Lawsuit that "Trinity is expressly prohibited from unreasonably withholding consent" to Acuity developing and operating long-term acute care hospitals at the Weirton and Wheeling facilities even though Weirton and Wheeling were not even parties to the Lease, even though Acuity has not filed any legal action against Trinity for wrongfully withholding consent, and even though Trinity never even had the opportunity to consider consent where all of the collusive conduct described above occurred without the knowledge of Trinity, including Acuity signing letters of intent with both Wheeling and Weirton.

28. In the Collusive Lawsuit, Weirton and Wheeling also seek injunctive relief enjoining Trinity "from objecting to and/or interfering with the development and/or operation" of Acuity's long-term acute care hospitals at Wheeling and Weirton, and even assert that "Trinity has intentionally interfered with" Wheeling and Weirton's "rights to develop" long-term acute care facilities at their hospitals.

29. The Collusive Lawsuit is collusive because Weirton and Wheeling know that the actual parties to the Lease at issue are an Ohio limited partnership (Acuity) and an Ohio non-profit corporation (Trinity).

30. By orchestrating the Collusive Lawsuit with Acuity and its general partner, Weirton and Wheeling seek to take advantage of what they believe is a friendly

6

7660420v1

jurisdictional forum where any Lease controversy is solely and exclusively between two Ohio entities governed by Ohio law.

31. Further evidence of the collusion among Weirton, Wheeling, and Acuity is the fact that the Lease also contains a forum selection clause which plainly states that "litigation, if any, shall be commenced and maintained in the Jefferson County, Ohio pleas court [sic] only."

32. Weirton and Wheeling have colluded with Acuity to orchestrate the filing of the Collusive Lawsuit as a means of avoiding the forum selection clause to which Acuity is bound.

33. The Collusive Lawsuit allows Acuity to be a party as a defendant in a lawsuit in Brooke County, West Virginia that just so happens to put at issue a dispute that is solely between Trinity and Acuity, and which could only be brought by Trinity or Acuity in the Court of Common Pleas of Jefferson County, Ohio.

34. The collusive lawsuit has resulted in current loss in the form of attorney fees.

35. With the active support and assistance of Wheeling and Weirton, Acuity is intentionally breaching its Lease with Trinity by (a) removing twenty beds before the term of the Lease is completed, (b) but also by establishing a long-term acute care hospital within forty miles of the leased premises with the very same beds that were the subject of the Lease with Trinity, and (c) violating the forum selection clause under the cover of being sued by friendly plaintiffs.

## COUNT I – Tortious Interference With Contractual Relations

36. Trinity realleges and incorporates herein each and every allegation set forth above.

37. Without privilege to do so, Wheeling and Weirton knowingly and intentionally interfered with the contractual relationship between Acuity and Trinity

7

7660420v1

whereby Trinity will suffer the loss of twenty beds and will also suffer from prohibited competitive activity.

38. As a result of the tortious conduct of Wheeling and Weirton, Trinity will suffer a disruption in its revenue stream of approximately $9.9 million over the next three years.

39. As a result of the tortious interference of Wheeling and Weirton in the contractual relationship between Acuity and Trinity, Wheeling and Weirton are not only liable for all of the lost revenue resulting from such interference, but also are liable to Trinity for any profits they make as a result of their respective contractual relationships with Acuity that violate the Lease.

40. Furthermore, Wheeling and Weirton's conduct was malicious, in bad faith, and in conscious disregard for the rights of Trinity, warranting an award of punitive damages and attorneys' fees against Wheeling and Weirton.

## COUNT II – Civil Conspiracy

41. Trinity realleges and incorporates herein each and every allegation set forth above.

42. Wheeling and Weirton agreed to engage, and did engage, in an unlawful combination to injure Trinity through its malicious and wrongful interference in the contractual relationship between Trinity and Acuity.

43. The conspiratorial conduct of Wheeling and Weirton resulted in economic harm to Trinity, warranting an award of compensatory damages to Trinity.

44. Furthermore, Wheeling and Weirton's conduct was malicious, in bad faith, and in conscious disregard for the rights of Trinity, warranting an award of punitive damages and attorneys' fees against Wheeling and Weirton.

WHEREFORE, for the foregoing reasons, Trinity demands judgment jointly and severally against Weirton and Wheeling in amounts that will be proven at trial, plus an award of punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

Respectfully submitted,

Quintin F. Lindsmith (0018327)
Natalie Trishman Furniss (0075328)
James P. Schuck (0072356)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215
(614) 227-2300
(614) 227-2390 (facsimile)
qlindsmith@bricker.com
nfurniss@bricker.com
jschuck@bricker.com

*Counsel for Plaintiff*

**JURY DEMAND**

Trinity hereby demands a trial by jury on all issues so triable.

Quintin F. Lindsmith